## LOUISVILLE & N. R. CO. v. MOUNT.

Circuit Court of Appeals, Sixth Circuit.
November 8, 1929.

No. 5394.

A. J. Freiberg, of Cincinnati, Ohio (Freiberg, Simmonds & Forchheimer, of Cincinnati, Ohio, on the brief), for appellant.

H. M. Roberts, of Cleveland, Ohio (Howell, Roberts & Duncan, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON and HICKS, Circuit Judges, and NEVIN, District Judge.

HICKS, Circuit Judge. Appellee, herein called plaintiff, was injured while in the service of appellant and brought this action. The case is within the Federal Employers' Liability Act (45 USCA §§ 51–59). Plaintiff's petition alleged that he was a freight trucker; that his duty required him to push a truck loaded with iron from defendant's freight depot out on to a platform and then into an adjacent freight car; that there was a space between the platform and the floor of the car which was bridged by a sheet of steel called a "brow," one end of which rested on the platform and the other upon the floor of the car; that it was his duty to push the loaded truck from the platform over the brow into the car; that the employees of defendant whose duty it was to place said brow in position had neglected to fasten the same, with the result that as plaintiff pushed the loaded truck from the platform upon and over the brow it was forced out of position,

which caused the truck to turn over and the iron to be thrown on to the plaintiff's foot, injuring him. Appellant's motion for a directed verdict was denied. This action of the court is in varying phraseology assigned as error.

The primary question is: Was there substantial evidence to support the verdict?

Just what particular employee placed the brow in position is not certain. It is certain that plaintiff did not. However, whoever did it, was, under the act, onerated with the duty of exercising due care not only in placing it in position but in properly fastening it, because of the probability that it might otherwise slip from the impact of the truck and thus endanger the truck men.

▆▆ Two fastening methods were used. The one generally in use was to nail a wooden cleat to the platform and against the end of the brow and a similar cleat against the end of the brow on the floor of the car. Again, the brow has a series of perforations so spaced that, given any ordinary distance between the platform and the car, the brow may be readily placed and round iron pins inserted through a hole or holes adjacent either to the side of the platform or the sills of the car, or both, if necessary, the heads of the pins remaining flush with the upper surface of the brow, the pins thus located acting as braces for the brow and resisting any force tending to dislocate it. On the occasion in question the brow was not pinned, though an ample supply of pins was available, and there is substantial evidence that it was not cleated. Plaintiff and his fellow truckers had loaded upon the truck a circular steel bar about 18 feet long, weighing from 800 to 1,000 pounds, the bar resting upon the rungs of the truck and a wooden safety rack attached to its plow, the end of the bar extending some distance beyond the plow, and had pushed the truck thus loaded from the station platform along an improvised runway, consisting of other steel brows connecting intervening platforms and the floors of open box cars, until the truck rested upon the platform next to the car to be loaded. The projecting bar prevented plaintiff and his associates from pushing the truck directly into the car. The loading scheme therefore adopted was to push the truck upon the brow at its left side or corner, and as the truck ascended the inclined brow to gradually turn it to the right until it had entered the car. There is substantial evidence that in the execution of this plan by plaintiff and his fellows the truck mounted the brow at its left side, but with such force that the

impact skewed the brow to the right (the direction in which the truck was turning) and dislodged the lower left-hand corner of the brow from the platform and its upper right-hand corner from the car sill, thus causing the truck to overturn and the steel bar to fall upon plaintiff. Upon such showing we conclude that the case was for the jury. There was ample basis for it to conclude that, if the brow had been properly cleated or pinned, it would not have been dislodged, with the resultant injury, and that the failure to cleat or pin the brow proximately resulted from that lack of due care by defendant's servants for which, under the statute, the master is responsible. Title 45, c. 2, § 51, U. S. C. (45 USCA § 51).

Errors are assigned upon the court's failure to charge certain propositions:

First. As to assumption of risk. The court had stated the general rules of law upon the subject. It had stated "that the servant assumes the risk of injury from any danger which is naturally and ordinarily incident to his employment and all such dangers as are so obvious that he must in the continuance of his employment know of their existence and so simple or plain that he must appreciate the danger and risk which he runs." The complaint is that the charge should have explained that among the risks assumed were the dangers incident to the negligence of the defendant if seen by plaintiff or obvious to him. Suffice it to say, the evidence called for no such additional instruction. There is no evidence that at the time plaintiff rolled the loaded truck upon the bridge he either knew or that it was obvious that it had not been fastened.

Second. It was not reversible error to fail to charge "that it was the duty of the plaintiff to cleat the brow if he found the same uncleated, if said brow actually was uncleated, and that if under such circumstances plaintiff did not recleat the brow he could not recover." No such request is found in the record. The comment of counsel on that subject, in his colloquy with the court, falls far short of a request.

Third. There was no reversible error in failing to charge the jury "that if the proximate cause of the happening of the accident was due to some other person or to the plaintiff himself, they must find for the defendant." When this matter was called to the attention of the court, it then gave additional instructions upon the point, to which there was no exception.

Fourth. There was no error in failing to charge the jury, in substance, that contributory negligence of the plaintiff would, under the Federal Employers' Liability Act, mitigate the damages otherwise recoverable. The request was not applicable—there is no such suggestion of contributory negligence in the record.

Fifth. There was no exception to the failure of the court to state to the jury that they must not allow sympathy to dictate their verdict.

Finding no reversible error, the judgment is affirmed.